UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: LOREN A. POLLACK,

    Debtor.

_____/

LOREN A. POLLACK,

        Appellant,                                      Case No. 25-11937

v.                                              Honorable Nancy G. Edmunds

DAVID FINDLING; GERALD L.
POLLACK & ASSOCIATES, INC.;
ALEXANDER KOCOVES; and
INTERNAL REVENUE SERVICE;

        Appellees.

_____/

LOREN A. POLLACK,

        Appellant,                                      Case No. 25-12260

v.                                              Honorable Nancy G. Edmunds

DAVID FINDLING; MARK H. SHAPIRO;
ALEX KOCOVES; GERALD L. POLLACK
& ASSOCIATES, INC.; and
U.S. DEPARTMENT OF JUSTICE;

        Appellees.

_____/

**OPINION AND ORDER DENYING EMERGENCY MOTION TO STAY [65], DENYING MOTION TO INTERVENE [24], DENYING JOINDER MOTION [19], GRANTING MOTION TO DISMISS [17], AND DENYING ALL OTHER PENDING MOTIONS AS MOOT**

There are several motions pending before the Court in this consolidated bankruptcy appeal. Appellees Alexander Kocoves ("Kocoves") and Gerald L. Pollack & Associates, Inc. ("GLP") filed a "Motion to Dismiss Appeals" (ECF No. 17) (the "Motion to

1

Dismiss"), arguing that Debtor-Appellant Loren Pollack lacks standing and, alternatively, this appeal is moot under 11 U.S.C. § 363(m). Appellant has filed an emergency motion to, among other things, "immediately [s]trike Appellees' Motion to Dismiss for failure to serve and join Jennifer Hamama-Pollack" (ECF No. 19) (the "Joinder Motion"). And nonparty Jennifer Hamama-Pollack ("Hamama-Pollack") has filed a motion to intervene (ECF No. 24) (the "Motion to Intervene"). Since then, Appellant and/or Hamama-Pollack have filed several motions and "notices" requesting various relief. (*See, e.g.*, ECF No. 30, 34, 35, 38, 39, 42, 44, 62.) Most recently, Appellant has filed an emergency motion to stay. (ECF No. 65.)

Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and Federal Rule of Bankruptcy Procedure 8019, the Court dispenses with oral argument because the facts and legal arguments of the parties are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. The Emergency Motion to Stay is DENIED. The Motion to Intervene is DENIED as untimely. The Joinder Motion is DENIED because Appellant has not shown that his wife has an interest in the property at issue in this appeal. The Motion to Dismiss is GRANTED because Appellant lacks standing. All other motions or requests for relief filed by Appellant and Hamama-Pollack are DENIED as moot.

I.     **Background**

Appellant is a former shareholder in GLP. Appellant was a party to a 2006 Shareholder Agreement between him, Gerald Pollack ("Gerald"), and Kocoves (the "GLP Shareholder Agreement"). (ECF No. 9, PageID.2693.) This agreement requires the approval of 81% of outstanding shareholders for any "Fundamental Issue," including the

sale of any shares in GLP. (*Id.* at PageID.2694-95.) After Gerald's death, Kocoves purchased Gerald's interest in GLP from the Gerald L. Pollack Trust, making Kocoves the owner of all shares in GLP not owned by Appellant. (*Id.* at PageID.2326, 2368-79.)

Appellant filed for Chapter 7 bankruptcy in 2016. The case was assigned to the Honorable Mark A. Randon. Appellant's pre-petition assets included, among other things, his stock in GLP (the "GLP Stock"). Although Appellant represented in his schedules that his interest in GLP was 20 percent, the Trustee's investigation determined that the actual percentage interest was 12 percent. (ECF No. 15, PageID.3487.)[1] Appellant's debts included federal tax liabilities exceeding $2 million. (ECF No. 8-5, PageID.2314.) Pursuant to 26 U.S.C. § 6321, a lien in in this amount attached to "all property and all rights to property, whether real or personal, belonging to" Appellant, including the GLP Stock.

On April 22, 2025, the Trustee filed a motion to sell the GLP Stock to Kocoves for $425,0000 (the "Sale Motion"). (ECF No. 9, PageID.2325-40.) The Sale Motion represented that the Trustee had negotiated with Kocoves for the purchase of the GLP Stock since 2023. In 2023, Kocoves had engaged Stout Risius Ross, LLC, a valuation firm, to value the GLP Stock. Stout produced a report valuing the GLP Stock at $247,000 (the "Stout Report"). (*Id.* at PageID.2540-43.) A January 2025 report by public accounting firm Freedman & Goldberg, prepared at the request of the Trustee, determined that the

---

[1] The percentage of Appellant's ownership interest in GLP has apparently been the subject of significant state-court litigation. Judge Martha Anderson of the Oakland County Circuit Court determined that his interest was "less than 20%." (ECF No. 9, PageID.2478.) This determination was affirmed by the Michigan Court of Appeals. *Gerald L. Pollack & Assocs., Inc. v. Pollack*, No. 319180, 2015 WL 339715, at *1 (Mich. Ct. App. Jan. 27, 2015) ("Loren [Pollack] first argues that the trial court erred in determining that Loren owned less than 20% of the shares of GLP…. We disagree.").

3

GLP Stock's value was $239,872, which was less than Stout's 2023 valuation. (*Id.* at PageID.2614.) Nonetheless, Kocoves offered to purchase the GLP stock for $425,000—an amount greater than either valuation. (*Id.* at PageID.2332.) The Sale Motion also noted that a limitation in the GLP Shareholder Agreement prohibited the Trustee from selling the shares to anyone other than Kocoves, and that "extremely contentious litigation" in state court over Appellant's interest in GLP, which had continued for 15 years with "no end in sight," had "seriously affected GLP's value." (*Id.* at PageID.2335.) Appellant objected to the Sale Motion on various bases, including that the Trustee had not used a competitive bidding process, that his actual interest in GLP was 20%, and that "the $425,000 [sale] price is less than 1% of the interest's true value" (apparently implying that the GLP Stock's value exceeded $42,500,000). (*Id.* at PageID.2863, 2865-66.)

On May 5, 2025, the bankruptcy court held a hearing on the Sale Motion. (ECF No. 14.) The IRS appeared at the hearing and expressed its support for the sale. (*Id.* at PageID.3459-63.) The bankruptcy court was "reasonably confident that $425,000.00 [was] a fair price" for the GLP Stock, but it adjourned the hearing for 30 days to give Appellant an opportunity to find a higher-paying bidder. (*Id.* at PageID.3471-72.) The next day, the bankruptcy court entered an order providing that it would approve the proposed sale unless Appellant found "an unconditional offer with a purchase price of at least $467,500." (ECF No. 9-2, PageID.3314.)

The parties reconvened on June 9, 2025. (ECF No. 9-1, PageID.3153.) Appellant claimed to have found an alternative purchaser, Zack Jarbo. (*Id.* at PageID.3156-57.) Jarbo, however, did not appear for the hearing. (*Id.*) The only evidence of Jarbo's desire to purchase the GLP stock was an email sent from Appellant to the Trustee containing a

4

"Sworn Statement," purportedly signed by Jarbo, making a conditional offer to purchase the GLP Stock subject to review of various financial disclosures. (*Id.* at PageID.2955-56.) The document asserted that Jarbo "w[ould] not engage in direct communication with the Trustee or his office." (*Id.* at PageID.2956.) Despite attempts to contact Jarbo, the Trustee was unable to speak with him prior to the hearing to discuss the purported offer or negotiate the terms of sale. (ECF No. 9-1, PageID.3161-62.)[2]

The bankruptcy court concluded that there was no party willing to purchase the GLP Stock in accordance with its prior order. (*Id.* at PageID.3171-72.) Accordingly, on June 11, 2025, the bankruptcy court entered an order approving the sale of the GLP Stock to Kocoves for $425,000. (*Id.* at PageID.2992-95.) The bankruptcy court entered a "Corrected Sale Order" on June 20, 2025, to incorporate changes to the sale documents agreed upon by Appellees. (*Id.*, PageID.3015-18.) The order provided that the GLP stock would be "sold 'as is, where is,' and without representation or warranty, express or implied, of any kind, nature, or description, including, without limitation, any warranty of title or of merchantability, usability, or fitness for any particular purpose." (*Id.* at PageID.3017.) The order also stated that "Kocoves is deemed a good faith purchaser for purposes of 11 U.S.C. § 363(m)." (ECF No. 9-1, PageID.3017.)

Appellant filed an appeal of the Corrected Sale Order in this Court on June 24, 2025. (ECF No. 1.) On the same day, the bankruptcy court denied Appellant's request for a stay pending appeal. (ECF No. 9-2, PageID.3352.) Appellant then filed a separate

---

[2] The Trustee concluded from his independent research that Jarbo was the owner of a business called "Extreme Loans." The Trustee called Extreme Loans, spoke with a representative named Adrena, and asked Adrena to tell Jarbo to call the Trustee at the Trustee's personal cell phone number. (ECF No. 9-1, PageID.3162.) Jarbo did not return the call prior to the hearing. (*Id.*)

5

appeal of the order denying the stay, which this Court consolidated with Appellant's other appeal. (ECF No. 12.)[3]

On September 8, 2025, GLP and Kocoves filed the Motion to Dismiss, arguing that Appellant lacks standing to pursue this appeal and that the appeal is moot under 11 U.S.C. § 363(m). (ECF No. 17.) On September 10, 2025, Appellant filed an emergency motion seeking in part to stay the proceeding until Hamama-Pollack, his wife, was joined in the proceedings. (ECF No. 19.) The Court entered an order holding all merits briefing in abeyance pending the resolution of the two aforementioned motions on September 18, 2025. (ECF No. 23.) Hamama-Pollack filed the Motion to Intervene on the same day. (ECF No. 24.)

Appellant and Hamama-Pollack then filed multiple notices and motions alleging service irregularities and/or requesting extensions of the briefing schedule on pending motions. (*See, e.g.*, ECF Nos. 30, 34, 35, 38.) The Court granted several extensions of time for Appellant and Hamama-Pollack to submit responsive briefing. In an order issued on November 17, 2025, the Court found that Appellant and Hamama-Pollack had been properly served with all documents for which a response was permitted or required. (ECF No. 43, PageID.3984-85.) It further noted that if Appellant and Hamama-Pollack did not file responsive briefing in accordance with deadlines set by the Court, the Court would rule on the pending motions without further input from either of them. (*Id.* at PageID.3986.) Appellant and Hamama-Pollack filed a notice of appeal from the Court's order regarding

---

[3] After Appellant filed numerous "emergency" motions and other documents challenging the sale, the bankruptcy court issued an order deeming Appellant a vexatious litigator. *See In re Pollack*, No. 16-45138-mar, Doc. 483 (E.D. Mich. July 29, 2025).

6

the briefing schedule and service issues, claiming that it constituted a denial of their request to arbitrate the case. (ECF No. 45.)

On December 30, 2025, the Sixth Circuit dismissed the appeal for lack of jurisdiction. (ECF No. 58.) The Sixth Circuit noted that this Court's order regarding responsive briefing was not a final order, "[c]ase-management orders that don't deny substantive motions aren't appealable interlocutory orders," and Appellants had not yet filed a motion to compel arbitration. (*Id.* (citations omitted).) Following the dismissal of the appeal, this Court issued an order lifting the stay that was in place during the pendency of the appeal and setting new deadlines for responsive briefing. (ECF No. 60.) Pursuant to the new schedule, Appellant and Hamama-Pollack's briefs were due on January 15, 2026. On January 12, 2026, Appellant filed an emergency motion for a ten-day extension, citing the sudden loss of a friend and health issues. (ECF No. 61.) The Court denied that motion via text-only order.

On January 15, 2026, Appellant and Hamama-Pollack filed another notice of appeal to the Sixth Circuit. (ECF No. 63.) This time, Appellant attempts to appeal the Court's order lifting the stay and setting a briefing schedule and the text-only order denying his motion for an extension. (*Id.*) Appellant contemporaneously filed a motion to compel arbitration and to stay proceedings (ECF No. 62) and an emergency motion to stay pending "appeals" and pending "mandatory arbitration" (ECF No. 65). Appellant and Hamama-Pollack also filed timely response briefs. (ECF Nos. 66-69.)

II.     **This Court's Jurisdiction & Appellant's Requests to Stay**

The filing of a notice of appeal to the Sixth Circuit ordinarily divests this Court of jurisdiction. But while the Court stayed the proceedings during the pendency of

7

Appellant's previous appeal out of an abundance of caution, the Sixth Circuit has held that an appeal of "a plainly nonappealable order" does not divest the district court of jurisdiction. *See Cochran v. Birkel*, 651 F.2d 1219, 1222-23 (6th Cir. 1981). Appellant's recent appeal to the Sixth Circuit suffers from the same deficiencies as his first appeal. The Court has not issued any final, appealable order in this case and "[c]ase-management orders that don't deny substantive motions aren't appealable interlocutory orders." (*See* ECF No. 58 (citations omitted).) Thus, the Court has jurisdiction to consider the pending motions in this consolidated bankruptcy appeal.

The Court also finds that Appellant has not demonstrated that a stay is warranted. None of the relevant factors weigh in favor of a stay pending appeal. *See In re Holstine*, 458 B.R. 392, 394 (Bankr. E.D. Mich. 2011) (citations omitted). This is especially true because Appellant is attempting to appeal two nonappealable orders to the Sixth Circuit, and he lacks standing to bring the present appeal, as will be discussed below. Nor does the motion to compel arbitration warrant a stay. As the basis for that motion, Appellant relies on an arbitration provision in the GLP Shareholder Agreement, but Appellant's interest in the GLP stock became property of the bankruptcy estate upon the filing of his bankruptcy petition. Thus, Appellant's requests to stay the proceedings are denied.

### III.     Consolidated Appeal

#### A.     Standard of Review

This Court sits as an appellate court when reviewing decisions of the bankruptcy court. 28 U.S.C. § 158. Parties may appeal by right from "final judgments, orders, and decrees" of bankruptcy courts "in cases and proceedings." § 158(a). Congress's use of the word "proceedings" in § 158(a) makes bankruptcy court orders immediately

8

appealable "if they finally dispose of discrete disputes within the larger [bankruptcy] case." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (quoting *Howard Delivery Srv., Inc. v. Zurich Am. Ins.*, 547 U.S. 651, 657 n.3 (2006)). When a bankruptcy court order is appealed, the bankruptcy court's findings of fact are reviewed under a clearly erroneous standard, and its legal conclusions are reviewed de novo. *B-Line, LLC v. Wingerter*, 594 F.3d 931, 935-36 (6th Cir. 2010).

### B. Motion to Intervene

Hamama-Pollack seeks to intervene because she purportedly had "vested marital property rights" in the GLP Stock, which she claims were violated when the bankruptcy court permitted the sale of the GLP Stock without her participation and without her receiving sufficient notice. Appellant's Joinder Motion seeks to have her joined in the case for essentially the same reasons.

The Court will first address the Motion to Intervene. Under Federal Rule of Bankruptcy Procedure 8013(g), a motion to intervene in a bankruptcy appeal "must be filed within 30 days after the appeal is docketed." The motion must "concisely state":

> (A) the movant's interest;
> (B) the grounds for intervention;
> (C) whether intervention was sought in the bankruptcy court;
> (D) why intervention is being sought at this stage of the proceedings; and
> (E) why participating as an amicus curiae--rather than intervening--would not be adequate.

*Id.* Here, Hamama-Pollack's Motion to Intervene was not timely filed. The appeal in case no. 25-11937 was filed on June 27, 2025, and the appeal in case no. 25-12260 was filed on July 24, 2025. Hamama-Pollack did not move to intervene until September 18, 2025, nearly two months after the later of the two appeals was filed. Because the motion was

9

not "filed within 30 days after the appeal is docketed," the Court will deny the motion to intervene. *See* Fed. R. Bankr. P. 8013(g).

Even if the Court were to consider Hamama-Pollack's untimely motion, the Court would still deny it on the merits because there is no basis to believe that Hamama-Pollack ever held any interest in the GLP stock. Hamama-Pollack appears to argue that she acquired an interest in the GLP Stock through her marriage to Appellant. (ECF No. 24, PageID.3743.) For this proposition, she cites *Reeves v. Reeves*, 575 N.W.2d 1 (Mich. Ct. App. 1997) and *Byington v. Byington*, 568 N.W.2d 141 (Mich. Ct. App. 1997). Both cases discuss a court's division of property within a marital estate upon divorce under Mich. Comp. Laws. § 552.19. *See Reeves*, 575 N.W.2d at 2-3; *Byington*, 568 N.W.2d at 144. Hamama-Pollack thus argues that she took an interest in the GLP Stock because it was property of the marital estate. But the relevant statute only provides a mechanism for a court to distribute property "[u]pon the annulment of a marriage, a divorce from the bonds of matrimony or a judgment of separate maintenance." Mich. Comp. Laws. § 552.19; *see Reeves*, 575 N.W.2d at 2. Thus, as this Court has previously held, "up until the divorce action is filed, coownership of marital property is not created." *United States v. Patej*, No. 00-71944, 2003 WL 701392, at *4 (E.D. Mich. Jan. 17, 2003); *see also In re Slotman*, No. 12-80232, 2013 WL 7823003, at *7-8 (Bankr. W.D. Mich. Dec. 5, 2013) (holding that a spouse's right to marital property does not "come[] into existence" until the filing of divorce proceedings). There is no suggestion from Hamama-Pollack or any other party to the case that she and Appellant were in divorce proceedings before or at the time that the GLP Stock became part of the bankruptcy estate. Thus, Hamama-Pollack could not have acquired any claim to Appellant's interest in the GLP Stock. Intervention is unnecessary

10

because Hamama-Pollack has no interest that would be protected by permitting her to intervene.

### C.     Joinder Motion

The Court will also deny the Joinder Motion for similar reasons. The Joinder Motion is premised on the idea that Hamama-Pollack is an indispensable party under Federal Rule of Civil Procedure 19 and Federal Rule of Bankruptcy Procedure 7019 because she had property rights in GLP. (ECF No. 19, PageID.3560-61.) The Court initially notes that the Joinder Motion is procedurally defective because neither of the cited rules apply to bankruptcy appeals; Federal Rule 19 applies to original civil actions in district courts, and Bankruptcy Rule 7019 only operates to extend Rule 19 to adversary proceedings in bankruptcy court. And even if those rules applied, Hamama-Pollack does not have an interest in GLP for the reasons discussed above. For both reasons, Hamama-Pollack cannot be joined in this appeal, and the Joinder Motion is denied.

### D.     Motion to Dismiss

Appellant appeals the sale of the GLP Stock and the bankruptcy court's order denying his motion to stay the sale pending appeal. GLP and Kocoves' Motion to Dismiss argues that Appellant lacks standing to appeal because he stands to gain nothing from a decision reversing the sale order. They also argue that Appellant's appeal is moot under 11 U.S.C. § 363(m) because Kocoves was a "good faith purchaser" within the meaning of the statute.

In the Sixth Circuit, only a "person aggrieved" by an order from a bankruptcy court has standing to appeal from it. *In re Hum. Hous.*, 666 B.R. 332, 345 (B.A.P. 6th Cir. 2025).[4] A party is aggrieved if it is "directly and adversely affected pecuniarily by the order." *Id.* at 345 (quoting *Stark v. Moran* (*In re Moran*), 566 F.3d 676, 681 (6th Cir. 2009)). "Only when the order directly diminishes a person's property, increases his burdens, or impairs his rights will he have standing to appeal." *Fid. Bank, Nat. Ass'n v. M.M. Grp., Inc.*, 77 F.3d 880, 882 (6th Cir. 1996).

"Courts rarely find that a Chapter 7 debtor is a 'person aggrieved' by a bankruptcy court order regarding the disposition of property of the estate." *In re Amir*, 436 B.R. 1, 10 (B.A.P. 6th Cir. 2010) (citing *Monus v. Lambros,* 286 B.R. 629, 634 (N.D. Ohio 2002)). This is because the creation of an estate and the appointment of a trustee "'divest[s] the chapter 7 debtor of all right, title and interest in nonexempt property of the estate at the commencement of the case.'" *Id.* at 10 (quoting *Spenlinhauer v. O'Donnell*, 261 F.3d 113, 118 (1st Cir. 2001)); *see* 11 U.S.C. §§ 541(a), 704(a). "'Since title to property of the estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property.'" *In re Amir*, 436 B.R. at 10 (quoting *Spenlinhauer*, 261 F.3d at 118). In other words, the debtor is generally not affected by the trustee's use or transfer of property within the bankruptcy estate because that property no longer belongs to the debtor. *See id.*

---

[4] "Whether the Supreme Court's opinion in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), affected the legitimacy of the 'person aggrieved' standard in bankruptcy appeals has been debated within the Sixth Circuit." *In re Hum House*, 666 B.R. at 345 n.6. But, for now, the "person aggrieved test remains the standard applied by the Sixth Circuit." *Id.* (citation omitted). The Court is bound to follow the test until the Sixth Circuit concludes otherwise. *See id.* (concluding the same).

There are two exceptions to this general rule. A debtor may have standing if either (1) "'the debtor can show that a successful appeal would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus'" under 11 U.S.C. § 726(a)(6) or (2) "'the order appealed from affects the terms of the debtor's discharge in bankruptcy.'" *In re Amir*, 436 B.R. at 10 (quoting *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1144 n.12 (1st Cir. 1992)). The debtor must present "concrete evidence" showing that either exception applies. *Id.* at 10 (citing *United States v. Jones,* 260 B.R. 415, 418 (E.D. Mich. 2000)). "To proceed under the first exception, the debtor 'cannot simply claim that there is a theoretical chance of a surplus in the estate, but must show that such surplus is a reasonable possibility.'" *Id.* at 10 (quoting *In re Rake,* 363 B.R. 146, 151 (Bankr. D. Idaho 2007)).

Here, neither exception applies. No party suggests that the orders appealed from affected the terms of Appellant's discharge. So, Appellant can only prove that he has a pecuniary interest in the appeal by presenting "concrete evidence" that a successful appeal will result in a surplus to the estate. *See id.* at 10 (citing *Jones,* 260 B.R. at 418). Appellant cannot do this. The only asset of significant value in the estate at the time of sale was the GLP Stock, which was encumbered by an IRS lien exceeding $2 million. Therefore, to create a surplus in the estate, such that Appellant would stand to benefit from a new sale on remand, someone would need to be willing to purchase the GLP Stock for over $2 million. Appellant has not shown that such a person exists. The Court also finds it highly unlikely that a person would be willing to pay over $2 million for the GLP because third-party valuations within the last three years have estimated its value at a fraction of that. (*See* ECF No. 9, PageID.2540-43, 2614.)

Because there is no concrete evidence that a third-party buyer would be willing to pay enough for the GLP Stock to create a surplus in the estate, a remand for a new sale would not improve Appellant's position. Therefore, Appellant lacks any pecuniary interest in the appeal, and he lacks standing as a result. The appeal is therefore dismissed.[5]

### E. Remaining Motions

Appellant and Hamama-Pollack have filed several other motions and documents with the Court requesting various relief. Because the Court is dismissing the appeal for lack of standing, which is jurisdictional, all other requests for relief sought in any motion or other filing from Appellant and Hamama-Pollack are moot.

### IV. Conclusion

For the foregoing reasons, the Emergency Motion to Stay, the Motion to Intervene, and the Joinder Motion are DENIED; the Motion to Dismiss is GRANTED; and all other motions are DENIED AS MOOT.

SO ORDERED.

                                        s/ Nancy G. Edmunds
                                        Nancy G. Edmunds
                                        United States District Judge

Dated: January 20, 2026

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 20, 2026, by electronic and/or ordinary mail.

                                        s/ Marlena Williams
                                        Case Manager

---

[5] The Court does not reach the alternative argument that the appeal is moot under 11 U.S.C. § 363(m) because it has already determined that Appellant lacks standing.